# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER ALPERT and<br>REBECCA DRILL,<br>    Plaintiffs,<br><br>v.<br><br>STARWOOD HOTELS & RESORTS<br>WORLDWIDE, INC. and SHERATON<br>OVERSEAS MANAGEMENT,<br>    Defendants. | No. 3:14-cv-01872 (SRU) |

## ORDER ON MOTION FOR RECONSIDERATION

In this personal injury suit, plaintiffs Peter Alpert and Rebeccah Drill brought claims for negligence and loss of consortium against defendants Starwood Hotels and Resorts Worldwide, Inc. and Sheraton Overseas Management, relating to spinal cord and other injuries sustained by Alpert while on vacation at the Sheraton Hacienda del Mar Resort in Cabo St. Lucas, Mexico. Compl., Doc. No. 1, at 1. Specifically, plaintiffs alleged that defendants: (1) failed to take proper safety precautions for their beach waterfront; (2) failed to properly monitor their beach waterfront; (3) failed to provide proper warnings pertaining to the dangerous waterfront and surf conditions; (4) failed to properly train their management and employees in water safety; and (5) failed to adhere to the appropriate standard of care for water safety for similar waterfront resorts. *Id*. at 7–8. The threshold issue was whether Mexican or Connecticut tort law should apply. I concluded that Mexican law applied, and that plaintiffs failed to meet the "direct and immediate consequence" standard for causation under Mexican law. Accordingly, I granted defendants' motion for summary judgment.

**I.	Standard of Review**

The standard for granting motions for reconsideration is strict; motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).

**II.	Background**

On December 25, 2012, plaintiff Peter Alpert and his wife, plaintiff Rebeccah Drill, were staying at the Sheraton Hacienda del Mar Resort ("Resort") located in Cabo San Lucas, Mexico. Def's Mem. Supp. Mot. Sum. J., Doc. No. 73-1, at 1. Alpert and Drill are residents of Massachusetts, and the Resort is managed by Sheraton Overseas Management Corporation through its parent company, Defendant Starwood Hotels. *Id*. at 1, 4; Mem. in Opp'n Def's Mot. Sum. J., Doc. No. 84, at 2. The Resort is a member of a property owners' association called Cabo del Sol, which is comprised of houses, two golf courses, and two hotels including the Sheraton Hacienda del Mar. Mem. in Opp'n Def's Mot. Sum. J., Doc No 84, at 4.

There is no dispute that the waterfront at Hacienda del Mar is dangerous. *Id*. Defendants admit in their answer that "[t]he surf along the coast of Cabo San Lucas is extremely dangerous"

and that the waterfront is unprotected and prone to dangerous waves and tides." Def's Answer, Doc. No. 29, at 5. The brochure that defendants allegedly provided to Alpert upon his arrival, which he denies receiving, states that "seasonal beach changes can result in waves that break directly on to the beach . . . [t]hese conditions can be very dangerous because an inexperienced person[] who . . . is unaware of the oncoming wave may be thrust 'over the falls' head first directly onto the beach or into the shallow water at the sand bar . . . [which] can cause one's head or shoulder to strike the beach or the shallow bottom." Mem. in Opp'n Def's Mot. Sum. J., Doc. No. 84, at 14.

Alpert has been involved in water-related activities since he was young. Beth Alpert Dep. Trans., Doc. No. 73-7, at 32–33. According to Alpert's sister Beth Alpert, Alpert "has taken part in activities such as swimming, sailing on lakes, water skiing, and has taught sailing to others." Beth Alpert Dep. Trans., Doc. No. 73-7, at 32–34. Alpert has "vacationed with his family at beachfront resorts in locations such as Puerto Rico, Saint Kitts, Cabo, Cancun, Cape Cod, Martha's Vineyard, Nevis, Young Island, and Saint John." Rebeccah Drill Dep. Trans., Doc. No. 73-9, at 22–26. According to Alpert's wife Rebeccah Drill, the family went on a beach vacation once each year for 15 years prior to Alpert's injury, and they stayed at the Hacienda del Mar Resort 10–15 years before the present incident. *Id*. at 24–25.

On December 25, 2012, the date of the subject incident, Alpert went on a whale-watching excursion with his family. Peter Alpert Dep. Trans., Doc. No. 73-10, at 22. Alpert then had lunch with his brother Scott at the Resort, and Scott asked Alpert to accompany him to the ocean afterwards. *Id*. at 24. Scott entered the water first, and was 30 seconds to one minute ahead of Alpert. *Id*. at 25. Scott described the state of the water as "good rough surf." Scott Alpert Dep. Trans., Doc. No. 73-8, at 85. Alpert stated that he was standing in "maybe two feet of water"

when he saw a large wave coming toward him. Peter Alpert Dep. Trans., Doc No. 73-10, at 25–26. Alpert "turned around so that [the wave] wouldn't hit [him] in the face," and was struck in the back. *Id*. at 26. He began to tumble around in the surf, and his head hit the bottom of the sand, temporarily paralyzing his arms and legs. *Id*. He floated face down in the water, unable to move, and feared that he would drown. *Id*. Moments later several people grabbed him and pulled him out of the water onto the sand. *Id*. The same wave struck Scott Alpert, but he was not injured because he "ducked" into the ocean wave, and he was further out in the ocean than Alpert. Scott Alpert Dep. Trans., Doc. No. 73-8, at 77–78.

Paramedics eventually arrived at the scene and transported Alpert by ambulance to Ameridad Hospital; Alpert was transferred to UC San Diego trauma center on December 28, 2012. Peter Alpert Dep. Trans., Doc. No. 73-10, at 43. Alpert returned to Massachusetts 11 days later, where he was admitted to the Spaulding Rehabilitation Hospital for rehabilitation and therapy. Pl's Compl., Doc. No. 1, at 6. He was discharged from Spaulding after more than three weeks, requires continued follow up medical care, and will continue to require such care for the rest of his life. *Id*. Alpert's complaint lists his injuries as blunt trauma to the head, cranial, and cervical spine; severe abrasions to the forehead; central cord syndrome; multiple herniated discs; severe stenosis due to edema; temporary loss of all sensation and movement from the neck down; permanent loss of fine motor coordination in hands and feet; neurogenic bladder; loss of sensation in bowel and bladder; and multiple dental injuries requiring treatment. *Id*. at 5–6.

Plaintiffs filed the complaint in this case on December 15, 2014. Compl, Doc. No. 1. On March 30, 2018, defendants filed a motion for summary judgment. Doc. No. 73. On June 4, 2019, plaintiffs filed a cross-motion for partial summary judgment. Doc. No. 82. I held a hearing on August 30, 2018, taking the parties' motions under advisement. Doc. No. 100. On October 29,

2018, I issued a written ruling, granting defendants' motion for summary judgment and denying plaintiffs' partial motion for summary judgment. Doc. No. 103. Judgment entered on October 31, 2018. Doc. No. 105. After seeking multiple extensions, plaintiffs filed a motion for reconsideration of the judgment and order on the motion for summary judgment on January 2, 2019. Doc. No. 109. Defendants responded on January 23, 2019. Doc. No. 111.

**III.    Discussion**

Plaintiffs argue that my summary judgment ruling "failed to properly take into account the interests of the plaintiff's domicile, Massachusetts." Plaintiffs' Memorandum in Support of their Motion for Reconsideration of the Court's Ruling on Summary Judgment, Doc. No. 110, at 21. They further argue that I "erroneously treated defendant Starwood as if it were a Mexican domiciliary." *Id.*

Defendants argue that I "should deny Plaintiffs' Motion for Reconsideration because I correctly applied the Choice of Law analysis for the jurisdiction within which this matter is pending and the Plaintiffs failed to meet the strict standard required for reconsideration." Defendants' Response to Plaintiffs' Motion for Reconsideration of the Court's Ruling on Summary Judgment, Doc. No. 111, at 5.

The standard for granting motions for reconsideration is strict. *Shrader*, 70 F.3d at 257. In this case, the plaintiffs cannot point to controlling decisions or data that I overlooked. *Id.* Instead, they are merely attempting to relitigate their Choice of Law arguments. Because there has been no intervening change of controlling law, there is no new evidence, and there is no need to correct a clear error or prevent manifest injustice, Plaintiffs' Motion for Reconsideration is denied.

## IV. Conclusion

For the reasons set forth above, Plaintiffs' Motion for Reconsideration, Doc. No. 109, is denied.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of June 2019.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge